# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED CORROSION CONTROL, LLC**, 7954 Baltimore Annapolis Blvd, Glen Burnie, Maryland, County of Anne Arundel<br><br>*Plaintiff*,<br><br>v.<br><br>**CARBOLINE COMPANY**, 2150 Schuetz Road, St. Louis, Missouri.<br><br>*Defendant*. | Case No. 19-3525 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, United Corrosion Control, LLC. ("UCC"), through its undersigned attorneys, by way of its complaint against defendant, the Carboline Company ("Carboline"), states as follows:

## JURISDICTION AND VENUE

1.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because UCC and Carboline are citizens of different states and the amount in controversy exceeds $75,000, exclusive of all fees, costs and interest.

2.  Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the District of Maryland.

## THE PARTIES

3.  At all times relevant hereto, Plaintiff, UCC, was a Maryland limited liability company with its principal place of business at 7954 Baltimore Annapolis Blvd, Glen Burnie, Maryland engaged in the business of surface preparation and painting for a variety of industries, including transportation, marine, and industrial. Each of the members of UCC are residents of

Maryland and Florida, as set forth in Plaintiff's Corporate Disclosure Statement filed concurrently with this Complaint.

4. Upon information and belief, defendant, Carboline, is a Delaware corporation doing business throughout the United States, with its principal place of business at 2150 Schuetz Road, St. Louis, Missouri.

5. Carboline is engaged in the business of manufacturing and selling paints and coatings in Maryland and throughout the world. Carboline engaged in continuous and systematic business throughout Maryland and this District, including soliciting, marketing, selling and delivering its products.

6. UCC's claim against Carboline arises from Carboline's sale of its products to UCC in Maryland for delivery in Maryland.

## FACTUAL BACKGROUND

7. Carboline manufactures and sells various coatings including paint and epoxy systems for various industrial applications.

8. At all times relevant to this suit, UCC was in the business of, among other things, applying industrial coatings and painting systems on construction and maintenance projects.

9. This matter relates to a project known as the Stonewall Energy Project (the "Project"). The Owner of the project is Green Energy Partners/Stonewall, LLC (the "Owner"). The general contractor for the $500 million dollar construction Project was Bechtel Power Corporation ("Bechtel"). UCC served as a subcontractor to Bechtel on the Project.

10. The specific coatings at issue are the Carboline Semstone 870AFRC system and the Semstone 145AFRC systems (the "Coatings").

11. The Coatings were selected, approved and recommended by Carboline for the Project. UCC reasonably relied on Carboline's statements and representations concerning the suitability, characteristics and qualities of these systems for high-performance coating requirements of the Project.

12. On March 30, 2016, UCC sent the Project's coating system guide to Carboline for its review prior to UCC prior to sending its submittals to Betchel.

13. On March 31, 2016, Carboline responded with its comments on the coating system guide and supplied application guidelines for the Coatings.

14. On April 1, 2016, UCC sent the coating system guide and Carboline's comments to Bechtel.

15. In an email to Carboline dated April 11, 2016, UCC first placed an order for the Coatings. Carboline accepted the order and began shipping the Coatings, the first of which arrived at UCC's home office in Maryland on April 14, 2016. Carboline subsequently invoiced for the products. All of the contract documents are in the possession of Carboline.

16. On April 19, 2016, UCC requested coating system details and application guidelines from Carboline.

17. On April 20, 2016, UCC received coatings system details and application guidelines from Carboline.

18. All of the above documents are in the possession of Carboline.

19. UCC first began applying Coatings on April 27, 2016.

20. UCC properly applied the Coatings pursuant to the published application instructions and product data supplied by Carboline.

21. Despite the proper application of the Coatings, the Coatings failed. Specifically, numerous and recurring pinholes appeared in the Coatings. The presence of pinholes were inspected by Bechtel, and rejected as suitable for the application.

22. The pinholes had to be repaired by UCC at great expense.

23. UCC has applied comparable systems supplied by different manufacturers on identical surfaces on the same Project without pinhole issues.

24. Carboline visited the Project on numerous occasions to investigate the cause of the pinholes. Carboline was unable to identify the cause of the problems.

25. On May 12, 2016, Carboline representatives recommended that UCC abrasive blast beyond the previously recommended CSP 5 profile.

26. In a further attempt to correct the issue, Carboline directed that UCC add substances to the Coatings and use equipment that were not specified in any of the information previously provide by Carboline. Carboline's instructions to increase the CSP profile also required UCC to purchase additional Carboline material to cover the increased profile.

27. On May 17, 2016, Carboline representative inspected and subsequently approved the surface profile of all of the surfaces to be coated at the Project. Additionally, the Carboline representative observed and approved UCC's application of Semstone 800 patching mortar.

28. Despite these efforts and recommendations, pinholes were discovered in the application and Bechtel again rejected the work due to the presence of pinholes in the Semstone 870 topcoat.

29. Carboline provided UCC with oral and written warranties of the suitability and quality of Carboline Coatings.

30. As a result of the problems encountered on the Project stemming from the defective coatings, UCC was forced to cease doing business.

31. UCC seeks damages including, but not limited to, in the form of incidental, consequential, and other damages on the Project and lost profits for future work as a result of the problems encountered on this Project.

32. UCC informed Carboline that the Coatings were the cause of the problem on the Project and sought compensation from Carboline.

33. Carboline has refused to compensate UCC for any of the damages that UCC has incurred.

## FIRST COUNT
### (BREACH OF CONTRACT FOR SALE OF GOODS)

34. UCC incorporates the allegations of paragraphs 1-32 as if repeated at length.

35. UCC and Carboline entered into an agreement for the purchase and sale of the Coatings.

36. The Coatings were to be suitable, non-defective and conform with the specifications for the projects, to Carboline's own specifications, and the standard in the industry.

37. Carboline materially breached its Agreement with UCC by supplying its Coatings which were not suitable for the Project, which defect could only be discovered by UCC after application of the Coatings.

38. As a direct and proximate result of Carboline's breach of contract, UCC has incurred and will continue to incur substantial damages remedying the problem and additional damages on other projects.

39. Any purported limitations of remedies or claims are unreasonable, fail of its essential purpose, and are unconscionable.

40. UCC has satisfied all conditions precedent to recovery.

WHEREFORE, UCC demands judgment against Carboline for compensatory damages in an amount to be determined at trial, but greater than $75,000, plus counsel fees and costs of suit.

## SECOND COUNT
(BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY)

41. UCC incorporates the allegations of paragraphs 1-32 as if repeated at length herein.

42. Carboline impliedly warranted to customers like UCC that its Coatings were merchantable, suitable for use and non-defective.

43. Carboline breached its implied warranty of merchantability because the Coatings were not suitable or merchantable.

44. UCC has incurred and will continue to incur substantial damages remedying the defect and lost profits on other projects as a direct and proximate result of Carboline's breach of implied warranty of merchantability.

45. Any purported limitations of remedies, warranties or claims are unreasonable, fail of its essential purpose, and are unconscionable.

WHEREFORE, UCC demands judgment against Carboline for compensatory damages in an amount to be determined at trial, but greater than $75,000, plus counsel fees and costs of suit.

## THIRD COUNT
(BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE)

46. UCC incorporates the allegations of paragraphs 1-32 as if repeated at length herein.

47.	At the time of marketing and sale of the Coatings, Carboline had reason to know the particular purpose for which the Coatings would be used, and it knew that its skill and judgment were being relied upon to furnish a suitable product.  Accordingly, the Coatings contained an implied warranty of fitness for a particular purpose.

48.	Carboline breached the implied warranty of fitness for a particular purpose because the Coatings in fact were not suitable for use on the project for which it was sold to UCC.

49.	As a direct and proximate result of Carboline's breach of the implied warranty of fitness for a particular purpose, UCC has incurred and will continue to incur significant damages remedying the problems caused by the Coatings and lost profits on future work.

50.	Any purported limitations of remedies, warranties or claims are unreasonable, fail of its essential purpose, and are unconscionable.

WHEREFORE, UCC demands judgment against Carboline for compensatory damages in an amount to be determined at trial, but greater than $75,000, plus counsel fees and costs of suit.

**FOURTH COUNT**
(BREACH OF CONTRACTUAL WARRANTY)

51.	UCC incorporates the allegations of paragraphs 1-32 as if repeated at length herein.

52.	The contract contained an express warranty from Carboline to UCC that the Coatings would "meet the quality control requirements for this product" and would "perform in accordance with Carboline's specifications for that product." Carboline further warranted that its products would meet the specifications and other requirements of the Project.

53. The Coatings that Carboline supplied to UCC did not meet the terms of the express warranties.

54. As a direct and proximate result of Carboline's breach of express contractual warranty, UCC has incurred and will continue to incur substantial damages remedying the defects caused by the Coatings and additional damages on other projects.

55. Any purported limitations of remedies, warranties or claims are unreasonable, fail of its essential purpose, and are unconscionable.

WHEREFORE, UCC demands judgment against Carboline for compensatory damages in an amount to be determined at trial, but greater than $75,000, plus counsel fees and costs of suit.

## JURY DEMAND

Plaintiff demands trial by jury on all issues.

Respectfully submitted,

/s/Marcus R. Sanborn
Marcus R. Sanborn (Bar No. 21037)
**BLEVINS SANBORN JEZDIMIR ZACK PLC**
1842 Michigan Ave.
Detroit, MI 48216
p & f: (313) 338-9500
msanborn@bsjzlaw.com

*Attorneys for Plaintiff United Corrosion Control, LLC.*

Dated: December 11, 2019